## In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Melvin Foster, #06430-112, | ) | |
| | ) | Civil Action No. 9:07-0576-HMH-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Mrs. Rivera, Warden, | ) | |
| FCI Estill, | ) | |
| | ) | |
| Respondent. | ) | |

## I.  INTRODUCTION

The Petitioner, Melvin Foster (the "Petitioner" or "Foster"), is a federal prisoner who presently is incarcerated in the Federal Correctional Institution ("FCI") Estill, South Carolina. He has filed this *pro se* habeas corpus action against the above-named respondent, Mrs. Rivera, the Warden of FCI Estill (the "Respondent"), alleging that his due process rights were violated during an internal prison disciplinary hearing in March 2006, at which time he was found guilty as charged.  He seeks dismissal of the sanctions and restoration of his good time credits.[1]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The Respondent denies the violation of any due process right of the Petitioner and seeks summary judgment.  [10] As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

---

[1]    The following sanctions were imposed on the Petitioner on April 18, 2006:  Forty days' disciplinary segregation, loss of forty (40) days of good time, one (1) year loss of visitation (to ended on April 18, 2007), to be followed by visitation only by members of the Petitioner's immediate family, starting on April 18, 2007 to April 18, 2008.  *See* Petition [1] at p. 2.

## II. *PRO SE* PETITION

The Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the petitioner's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp.

2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).  Such is the case with the present petition.

### III.  BACKGROUND TO THE CASE

On March 14, 2006, while incarcerated in the Federal Transportation Center ("FTC"), in Oklahoma City, Oklahoma, Foster allegedly dropped a plastic bag containing a piece of paper and an envelope containing green leafy substance in the visual search room trash can.  *See* Respondent's Exhibit 2, Incident Report.  Also on March 14, 2006, the Nik Test kit "E" was used to test the green leafy substance and the test indicated a positive result for marijuana.  *Id.*

On March 23, 2006, Foster was administratively charged with the prohibited act of Possession of Marijuana (Code113).[2]  *See* Respondent's Exhibit 2, Incident Report.  The incident report was delivered to Foster on March 23, 2006.  *Id.* at blocks 14, 15, & 16.  On March 25, 2006, a Unit Discipline Committee ("UDC") hearing was conducted, at which time Foster was afforded an opportunity to make a statement and supply evidence on his behalf.  *Id.* at block #17. The UDC found that Foster had committed the prohibited act and referred the charge to the Inmate Discipline Hearing Officer ("DHO") for further consideration.  *Id.* at blocks 18-21.

On March 25, 2006, Foster received a copy of Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing.  *See* Respondent's Exhibit 3, Notice of Discipline Hearing Before the DHO, and Exhibit 4, Inmate Rights at Discipline Hearing.  According to the Inmate Rights at Discipline Hearing, Foster had the right (among others) to ask for a staff representative, the right to call witnesses or present written statements of unavailable witnesses, the right to present documentary evidence on his behalf, the right to present a statement or to remain silent, and the right to be present throughout the discipline hearing.  Foster signed the

---

[2]       The BOP's Prohibited Acts and Disciplinary Severity Scale is codified at 28 C.F.R. § 541.13 et. seq.

Inmate Rights statement on March 25, 2006, indicating he had received the statement of Inmate Rights. *See* Respondent's Exhibit 4, Inmate Rights at Discipline Hearing. However, Foster waived the right to use a staff representative and elected not to call any witnesses. *See* Respondent's Exhibit 3 and Exhibit 5, Discipline Hearing Officer Report, §§ II and III (C).

On April 18, 2006, Foster received a discipline hearing before the DHO. *See* Respondent's Exhibit 5 and Exhibit 6, Declaration of Esther Slater. During this hearing, Foster was afforded the opportunity to make a statement, have a staff representative, provide evidence on his behalf, have witnesses appear, or present written statements of unavailable witnesses. *Id.* Foster submitted a written statement in his defense. *Id.* After consideration of all the evidence before her, the DHO found that Foster had committed the prohibited act of Code 113 as charged. *Id.* The DHO outlined the evidence relied upon, the sanctions to be imposed, and the reasons for the sanctions imposed. *Id.*

On or about May 31, 2006, Foster appealed the DHO's finding to the Southeast Regional Director, claiming that he had not committed the prohibited act, there was insufficient evidence to support the charge, and requesting that the sanctions be vacated. *See* Respondent's Exhibit 7, Regional Office Administrative Remedy Appeal. On June 21, 2006, the Regional Director upheld the DHO's finding. *See* Respondent's Exhibit 8, Regional Office Administrative Response. The Regional Director found that the disciplinary procedures were substantially followed, the evidence supported the DHO's finding, and the sanctions were appropriate for the offense. *Id.*

On or about August 11, 2006, Foster appealed the DHO's finding to the National Inmate Appeals Administrator, claiming that his procedural due process rights had been violated, and requesting expungement of the incident report, and restoration of his privileges and good time credits. *See* Respondent's Exhibit 9, Central Office Administrative Remedy Appeal. On

December 5, 2006, the National Inmate Appeals Administrator upheld the DHO's finding. *See* Respondent's Exhibit 10, Central Office Administrative Remedy Response. The Administrator found that the required disciplinary procedures were substantially followed, Foster's due process rights were upheld during the discipline process, the greater weight of the evidence supported the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy. *Id.*

## IV. PROCEDURAL HISTORY

On February 23, 2007, the Plaintiff commenced this action against the Respondent.[3] [1] After the case was brought in to proper form, the court issued an Order authorizing service of process by the clerk. [7] On May 16, 2007, the Respondent filed an answer [9], and on July 5, 2007, the Respondent filed a motion for summary judgment, with attached exhibits [10].

By order of this Court filed on July 6, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the possible consequences if he failed to respond adequately to the motion for summary judgment. [11] When the Petitioner failed to respond to the *Roseboro* order, the undersigned issued an order on August 13, 2007 allowing the Petitioner twenty (20) days in which to respond to the motion for summary judgment. [13] On August 28, 2007, the Petitioner filed his response in opposition to the Defendants' Motion for Summary Judgment. [16]

## V. STANDARD OF REVIEW

### A. The Respondent's Motion for Summary Judgment

The Respondent's motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

---

[3] The Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), should a limitations issue arise in this action. *See* Order filed May 7, 2007. [26]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the

summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

## VI.  ANALYSIS

### A.  Introduction

As a *pro se* litigant, the Petitioner's Petition must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend,  for the reasons set forth below, that the Respondent be granted summary judgment.

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once

within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now

mandatory.").  It is well established that the requirement "applies to all inmate suits about prison

life," whether they involve general circumstances or particular episodes and whether they allege

excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. at 532; *see also Booth v.*

*Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001).

   The Respondent has stipulated that the Petition has exhausted the administrative

remedies available under the formal Administrative Remedy procedures established by the BOP

in 28 C.F.R. § 542.10.[4]  Accordingly, the court will turn to the merits of the case.

### C.  Due Process in Prison Disciplinary Proceedings

   Federal habeas corpus jurisdiction is available under 28 U.S.C. § 2241(c)(1) to prisoners

who complain of disciplinary proceedings and resulting punishment or loss of privileges without

procedural due process.  *See McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975).  This court's

analysis as to whether Foster received procedural due process is governed by *Wolff v.*

*McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), wherein the

Supreme Court held that when a state creates protected liberty interests in good-time credits, the

inmate is entitled "to those minimum procedures appropriate under the circumstances and

required by the Due Process Clause to ensure that the state-created right is not arbitrarily

abrogated[.]"  *See also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (same).

*Wolff* teaches that before prisoners may be punished for misconduct by being deprived of

good-time credits, they must be given advance written notice of the charges against them, they

must be allowed to call witnesses (if prison safety so allows), and the factfinders must issue a

written statement as to the evidence relied upon and the reasons for the disciplinary action.

---

[4]     *See* Respondent's Memorandum [10] at p. 4.

*Wolff*, 418 U.S. at 563-67, 94 S.Ct. at 2978-80.  The Bureau of Prisons  ("BOP") rules embodying disciplinary procedures are codified at 28 C.F.R. §541.10 *et seq*.  These rules and regulations were written so as to comply with the constitutional requirements of due process in prison discipline matters.

The records submitted to the court in connection with Foster's disciplinary hearing demonstrate that the due process requirements of *Wolff* were observed.  Foster was given advance written notice of the charges more than 24 hours before the DHO hearing.  *See* Respondent's Exhibits 2-6.  He was offered the opportunity to have the assistance of a staff representative, present evidence in the form of documents or witnesses, or present statements from witnesses.  The records reflect that Foster chose not to avail himself of the opportunity to have a staff representative or to call witnesses.  *See* Respondent's Exhibit 5, §§ II and III.  The record of the hearing reflects that Foster appeared, made a statement to the decisionmaker and gave the decisionmaker a written statement of his version of the incident in question.  *Id*. at §III. All of the documents in the disciplinary process consistently indicate Foster never asked for any witnesses.  *See* Respondent's Exhibits 2-6.  The record of the hearing reflects the evidence relied upon and the reasons for the decision and the sanctions imposed.  *Id.* at §§§ V, VI, VII.

Furthermore, the DHO Officer, Esther Slater ("Slater"), specifically recalled Foster and the detailed written statements he provided at his DHO hearing.  *See* Respondent's Exhibit 6, Declaration of Esther Slater.  Slater remembers Foster because of the seriousness of the his allegations against certain staff and inmates at FTC Oklahoma.  *Id.*  She specifically remembers that when asked if he wanted to call any witnesses he said no and she properly noted that on the DHO report.  *Id.*  She also remembers in the written statement he provided there was no mention by Foster about witnesses that could support his version of what happened on the day in question.  *Id.* and Exhibit 5, Attachment.  If Foster had witnesses that could support his version

of what happened and if such witnesses (inmates) had transferred to other institutions, he could have asked the DHO to get those witnesses' statements and the DHO would have postponed the DHO hearing and rescheduled it once written statements from those witnesses could be obtained. *See* Respondent's Exhibit 6.  However, Foster did not indicate he wanted to call any witnesses at his DHO hearing and he never mentioned any witnesses to the DHO or to any staff member involved in the investigation of this matter.  *Id.*

Although Foster has submitted a declaration [16] to the court which states in part that he "did not waive [his] right to have [his] witnesses called" and he "did not know that [he] had a right to have the statements of my witnesses during the DHO hearing[,]" the court finds these statements to be refuted by the weight of the evidence of record.  With respect to whether Foster waived his right to call witnesses, the Incident Report indicates that Foster did not ask for any witnesses on March 23, 2006, at the time of the investigation.  *See* Respondent's Exhibit 2, block 25.  Furthermore, the Notice of Discipline Hearing before the DHO reveals that Foster stated he did not wish to have witnesses.  *See* Respondent's Exhibit 3.  The Discipline Hearing Officer Report, too, indicates that Foster did not request any witnesses.  *See* Respondent's Exhibit 5, Box III C. 1.  Finally, with respect to whether Foster knew he could call witnesses, the afore-mentioned questions make clear that he could have called witnesses, and, in addition, Foster signed for a copy of the Inmate Rights at Discipline Hearing which informed him that he had the right to call witnesses or present written statements of unavailable witnesses.  *See* Respondent's Exhibit 4.  Thus, the court finds that Foster's claims are without merit.

### D. Sufficiency of Evidence in Prison Disciplinary Proceedings

In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions.  The *Hill* court held that due process is satisfied if there is "some"

evidence to show that the inmate committed the offense.  *Id.* at 455.  The Court declined to adopt

a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456.

The "some evidence" standard is a lenient one, requiring no more than "a modicum of

evidence," and is met if there is any evidence in the record that could support the board's

decision.  *Hill*, at 455-56, *cited in Taylor v. Bauknecht*, 2007 WL 2021880 at *4 (D.S.C. July 6,

2007).  The "some evidence" standard is less exacting than the preponderance of the evidence

standard, requiring only that the decision not be arbitrary or without support in the record.  *Hill*,

472 U.S. at 457, 105 S.Ct. 2768.  In reviewing a decision for "some evidence," courts "are not

required to conduct an examination of the entire record, independently assess witness credibility,

or weigh the evidence, but only determine whether the prison disciplinary board's decision to

revoke good time credits has some factual basis."  *Id.* at 455-56, 105 S.Ct. 2768; *see also Baker

v. Lyles*, 904 F.2d 925, 932 (4th Cir 1990).  This standard requires "only that the decision not be

arbitrary or without support in the record."  *Taylor*, 2007 WL 2021880 at *4, *citing McPherson

v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Judicial review of prison disciplinary actions is, therefore, limited solely to the

determination of whether there is evidence in the record to support the DHO's decision.  *See

Kirillov v. Yancy*, 2006 WL 2827373 at * 6 (D.S.C.) (District Court found there was some

evidence to support the DHO's decision).  As noted by the Seventh Circuit:

> Under *Hill*, the courts are barred from assessing the relative weight of the evidence.  It is therefore in general immaterial that an accused prisoner presents exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied or there are other extra-ordinary circumstances.

> Courts have followed this approach in decisions after *Hill.* While the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability, . . . ,once the court has found the evidence reliable, its inquiry ends--it should not look further to see whether other evidence in the record may have suggested an opposite conclusion.

*Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989) (*citing Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986)).  Put another way, the due process requirement that there be a written record does not "imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." *Hill*, 472 U.S. at 455.

As the Fourth Circuit has stated:

> If the *Wolff* guidelines are satisfied, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. *James v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 126 (1977) (curbing an unlawful drug epidemic).  Such deference is essential "because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his dominion than the reviewing judge[.]" *Bell v. Wolfish*, 441 U.S. 520, 548 (1979).  Accordingly, findings of prison disciplinary boards meet the minimum requirement of due process if they are supported by "some evidence" on the record. *Superintendent v. Hill*, 472 U.S. at 454.

*Thompson v. Hall*, 883 F.2d 70 (Table) 1989 WL 90668 *3 (4th Cir. 1989).

Foster has challenged an administrative discipline proceeding, not a judicial proceeding. The standard of proof is vastly different between the two.  As the Supreme Court noted "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Hill*, 472 U.S. at 456 (internal citations and quotations omitted).

Review of the record in this case shows that there was some evidence to support the DHO's decision.  The DHO relied upon the written report of the investigating officer, the investigation and the supporting evidence. *See* Respondent's  Exhibit 5 at block V.  As there is some evidence to support the DHO's decision, it will be upheld by the court.

### E.  The Statement of the DHO was sufficient

The Supreme Court has held that in prison discipline proceedings "there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff,* 418 U.S. at 564.  The court's review of the documents underlying this petition reflect that the DHO did provide Petitioner which such a statement.  *See* Respondent's Exhibit 5, §§ III, V and VII.  The "kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides."  *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987).  However, the "Constitution does not require that the evidence relied upon logically preclude any conclusion but the one reached by the disciplinary board."  *Id.*, (*quoting Hill*, 472 U.S. at 457).  The *Culbert* court held that the statement of the prison disciplinary board was sufficient to meet the requirements of due process, stating:  "Although, in each instance, the committee referred to the conduct report as the basis for its guilt determination, nothing more is constitutionally required where the only issue presented at the hearing involved an assessment of the relative credibility of the conduct report and the plaintiff's account of the incident."  *Culbert*, 834 F.2d at 631.  The court's review of the DHO report indicates a lengthy discussion by the DHO of the evidence she relied upon and the reasons for her decision.  *See* Respondent's Exhibit 5, § V.  The DHO's statement comports with the requirements of due process.

In conclusion, the Petitioner's constitutional rights were not violated because he received all the process due him under the standards established in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).  Therefore, it is recommended that the DHO's decision be upheld.

## <u>RECOMMENDATION</u>

Based upon the reasons set forth above, it is recommended that the Petitioner's Petition for *habeas corpus* relief **[1] should be denied and dismissed**, and that the Respondent's motion for summary judgment **[10] should be granted.**


GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE


September 19, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).